332 So.2d 256 (1976)
STATE of Louisiana
v.
Keith GILMORE.
No. 57201.
Supreme Court of Louisiana.
May 17, 1976.
*258 Lyall G. Shiell, Jr., New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, District Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
Keith Gilmore was charged by bill of information with the armed robbery of Robin Dillon on October 6, 1972. He was tried, found guilty and sentenced on April 26, 1973 to serve eighteen years at hard labor. Seven bills of exceptions were reserved; five are relied upon for reversal of the conviction.

Bills 1 and 4
Defendant timely filed a motion to suppress a confession alleging that the police officers forced him into making the confession "by threats of bodily harm and actual duress." Bill 1 was reserved to the denial of the motion, and Bill 4 was reserved to the introduction of the confession into evidence.
Officers Calaco and Weicks arrested Gilmore on October 11, 1972 about two o'clock in the afternoon near a barroom at the corner of North Derbigny and Forstall Streets. They informed him of the charges against him and advised him of his rights from a printed form as soon as he entered the police vehicle. At that time both Gilmore and Officer Calaco signed the rights of arrestee form. The document is in the record and thoroughly explains the rights of the person arrested. Gilmore was then interrogated by the officers for approximately ten or fifteen minutes, at which time Gilmore admitted the commission of the robbery, stating that he wanted to tell them why he did it.
The officers drove to central lockup where they resumed questioning Gilmore in the interrogation room. Gilmore then told them he wanted to make a statement. The statement, in question and answer form, is a two-page document. Gilmore acknowledges in the statement that he has been advised of his rights and that he signed the rights form. A narrative account of some length is then recited by Gilmore giving details of the armed robbery. He signed the statement on the second page and initialed the first page, as did the two officers interrogating him. The statement was completed at 3:10 that afternoon.
Gilmore's testimony at the hearing was that he was struck by the officers while en route to central lockup. He said he was hit with a book in the interrogation room and after that the officers punched him in the side. While he acknowledged at the hearing that he signed the statement, he *259 testified that he did so because he was struck four or five times by the interrogating officers. He also testified that he was not advised of his rights until he was being booked, after the statement was signed.
Officer Calaco categorically denied that Gilmore was mistreated in any way, stating that the confession was free and voluntary.
In his per curiam to Bill 1 the trial judge, reviewing what he considered to be the credible testimony, stated this opinion:
"From the entire evidence and testimony, I felt that the State had borne its burden of proof that the statement made by the defendant was made freely and voluntarily, and after he had been advised of all his constitutional rights both orally and by written form. And that this had been established to my satisfaction and beyond a reasonable doubt."
Before a confession or inculpatory statement can be introduced into evidence in a criminal trial the State must affirmatively show that the confession or statement was voluntarily given and was not obtained through fear, duress, intimidation, menaces, threats, inducements or promises. La.Const. art. I, § 16 (1974); La.Rev.Stat. 15:451-52. In addition, since the decision in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), the State must establish that prior to being questioned the accused was told by the police officers that he had a right to remain silent, that anything he might say would be used against him in court, that he had a right to counsel and that if he could not afford an attorney one would be furnished free of charge.
Admissibility of a confession is to be determined by the trial judge, while the weight to be given to the confession is a question for the jury. The conclusions of the trial judge on the voluntariness of the confession to determine its admissibility, therefore, is a question of fact which this court will not overturn unless it is not supported by the evidence. State v. Sims, 310 So.2d 587 (La.1975); State v. Vessel, 260 La. 301, 256 So.2d 96 (1971); State v. Cripps, 259 La. 403, 250 So.2d 382 (1971).
The testimony in support of the voluntariness of the confession, the confession itself and the signed waiver of rights form all support the conclusion of the trial judge. On these findings the objection to the admission of the confession is also without merit.
These bills are without merit.

Bill 2 (abandoned)

Bill 3
Officer Weicks testified that he assisted in the follow-up investigation of this armed robbery. He said he and Officer Calaco proceeded to the site of the robbery and the surrounding neighborhood in an attempt to locate possible witnesses. In the course of this investigation, he talked to a reliable informer and after obtaining information at a location furnished by him they "proceeded to the record room in order to "
Defense counsel objected and moved for a mistrial; his contention being that such a statement before a jury, coupled with testimony leading to the arrest of the defendant, suggested to the jury that the defendant had a past record of an arrest or conviction. And, since no reference to an arrest was permissible under any circumstance and, because the defendant had not taken the stand, reference to a conviction was also prohibited. La.Rev.Stat. 15:495. No further reference was made to the record room in Officer Weicks' testimony.
The objection was overruled, the trial judge being of the opinion that
"the mere words alone about which he complains, `proceeded to the record room in order to' of themselves, mean nothing. There are several things they could have done at the record room and counsel *260 did not state what the jury was supposed to believe the reason for going to the record room was.
"I fail to see how this fragmented, unresponsive statement by the officer prejudiced the defendant or raised any legal basis for the mistrial . . . ."
Defendant's objection is based upon Section 495 of the Revised Statutes:
"Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein."
Reference to the record room in Officer Weicks' testimony was not a reference to, or a remark or comment about another crime made within the hearing of the jury by the judge, district attorney, or a court official, during the trial, or in argument, which would authorize a mistrial under Article 770 of the Code of Criminal Procedure. The remark was by a witness, and not by any of the officials to which Article 770 applies. Nor is the defense contention for a new trial saved by relying upon Article 771 of the Code of Criminal Procedure. In order for the defense to insist upon an admonition to the jury to disregard the remark, it was necessary for the defendant to request that the court admonish the jury. This was not done.
Moreover, in truth, there was no reference to another crime. Only by speculation, conjecture or surmise could the testimony be considered a reference to another crime; nor does the evidence disclose what record room was referred to or what records were contained there. Thus, defense counsel's argument that the jury necessarily concluded that the reference to the record room was a reference to the fact that officers would find evidence of defendant's previous arrest or conviction there is not supported by the evidence. To the contrary, a plausible inference could just as well have been drawn that nothing against defendant would be, or was, found in the record room.

Bill 5
During the course of the trial the defense objected when the State offered to introduce and file into evidence a photograph of a pretrial lineup in which the defendant was required to participate. The basis of the defense objection was that he did not have the advice of counsel and was not represented by counsel at the lineup. October 6, 1972 was the date of the robbery, the lineup identification and photograph occurred on October 18, 1972 and Gilmore was accused by bill of information filed on October 26, 1972.
The rights of arrestee form makes clear that defendant was informed of his right to counsel. Notwithstanding this advice, he did not request counsel; and he does not point to anything in this record which would demonstrate that this lineup was not fairly conducted. State v. Bland, 310 So.2d 622 (La.1975); State v. Johnson, 306 So.2d 724 (La.1975); State v. Hatch, 305 So.2d 497 (La.1974); State v. Hall, 261 La. 777, 260 So.2d 913 (1972). Furthermore, the testimony describing how the lineup was conducted satisfied the trial judge, and this Court agrees, that it was fair and free of any undue suggestion.
On the afternoon of the lineup, defendant and five other inmates fitting his general description were placed on the lineup stage. All wore prison uniforms and each had a number around his neck. Gilmore *261 was allowed to pick the number he wished to wear. He was positively identified by the victim and her mother, the other identification witness, both of whom witnessed the robbery. These witnesses were separated in the show-up room, were not permitted to talk until after the lineup was completed, and were separately interviewed by the officers conducting the lineup.
In the opinion of the trial judge the photograph gave the jury an opportunity to observe all those who were part of the lineup, decide upon the similarity of the participants and determine the weight to be given to the lineup identifications.
Although not expressed, defense counsel is undoubtedly basing this contention upon the right to have the assistance of counsel for his defense guaranteed by the Sixth Amendment to the United States Constitution and by Section 9 of Article I of the Louisiana Constitution of 1921, both of which form part of the Federal and State Bill of Rights.
The issue, therefore, is whether, under the Bill of Rights of the United States and the State of Louisiana, a person who has not been indicted may be compelled to appear in a lineup without the assistance of counsel, and whether a photograph of that lineup may be later admitted into evidence at the trial.
The Bill of Rights of both the Federal and State Constitutions, which guarantees that in all criminal prosecutions the accused shall enjoy the right to have the assistance of counsel for his defense, has been understood to mean that a defendant is entitled to the assistance of counsel not only at the trial itself, but at all "critical stages" of his prosecution. See Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970); United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967); Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967); Hamilton v. Alabama, 368 U.S. 52, 82 S.Ct. 157, 7 L.Ed.2d 114 (1961); State v. Kirkland, 260 La. 1011, 257 So.2d 693 (1972). The requirement that there be a "prosecution" means that the constitutional "right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against [an accused]. . . ." "It is this point . . . that marks the commencement of the `criminal prosecutions' to which alone the explicit guarantees of the Sixth Amendment are applicable." Kirby v. Illinois, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); State v. Governor, et al., 331 So.2d 443 (La.1976). Since the lineup identification in the present case occurred prior to the filing of the bill of information, before the adversary judicial proceedings had been initiated, that procedure was not such a "critical stage" at which either the Federal or State Constitutions require the presence of counsel.

Bill 6 (abandoned)

Bill 7
At the close of the State's case the Assistant District Attorney offered to introduce the rights of arrestee form signed by defendant, which purports to be a waiver of his rights as required by the decision of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Defense counsel objected that a sufficient showing was not made that defendant knowingly waived his rights. The objection was overruled and this bill was reserved.
This waiver of rights form was also sought to be suppressed by the motion considered in connection with Bill 1. As consideration of that bill demonstrates, the waiver was signed knowingly. There is no merit to this bill.
For the reasons assigned, the conviction and sentence are affirmed.