489 So.2d 1364 (1986)
STATE of Louisiana
v.
Kennedy THOMPSON.
No. KA 85 1430.
Court of Appeal of Louisiana, First Circuit.
May 28, 1986.
*1367 Bryan Bush, Dist. Atty., Baton Rouge by Lou Daniel, Asst. Dist. Atty., for plaintiff-appellee.
Leo J. Berggreen, Alfred Williams, Baton Rouge, for defendant-appellant.
Before LOTTINGER, WATKINS and CRAIN, JJ.
LOTTINGER, Judge.
Kennedy Thompson was charged by grand jury indictment with first degree murder. The indictment was amended on the first day of trial to charge the defendant with second degree murder and armed robbery, violations of La.R.S. 14:30.1 and 14:64, respectively. He was tried by a jury, convicted as charged and subsequently sentenced to serve life imprisonment at hard labor, without benefit of probation, parole or suspension of sentence for the second degree murder conviction and ninety-nine years at hard labor, without benefit of probation, parole or suspension of sentence on the conviction for armed robbery. He appeals, setting forth seven assignments of error. Defendant briefed six assignments of error and specifically abandoned the remaining issue.[1]
Defendant and his companion, James Penny, were charged with the armed robbery of Joseph Shaw, an elderly black male with whom defendant was slightly acquainted. On the evening of January 27, 1983, the two men hid in the bushes near Shaw's home in Baton Rouge and awaited his arrival. When the victim returned, they ran from the bushes, and defendant began to beat him about the head with an oak stick. After Shaw fell to the ground, Penny took his wallet and the two men made their escape. Approximately $3700.00 was taken in the robbery and equally split between them. Shaw was discovered in his yard some time later, suffering from the beating and exposure. After remaining in a coma for several days, Shaw died in the hospital from the head injuries he suffered in the robbery.

JURY SELECTION
In assignment of error number one, defendant urges that the method of jury selection deprived him of a fair and impartial jury drawn from a true cross section of the community.
After the jury had been selected, defendant orally moved to quash the petit jury venire and the petit jury, alleging the general venire, petit jury venire and petit jury had not been selected in accordance with La.Code Crim.P. art. 409.4 and Rule 7 of the general rules of court, Nineteenth Judicial District Court. The trial court ordered defendant to file a written motion and deferred ruling upon it until after the trial concluded. After the convictions were returned, the court conducted a hearing into the method of jury selection utilized in this proceeding.
At the hearing, defendant conceded that the list of thirty-six persons from the jury pool was randomly, constitutionally and legally selected by the jury management office. He claimed, however, that the specific method used in the courtroom was not a random selection process. One member of defendant's trial counsel team, Alfred Williams, testified that he observed the deputy summon several white prospective jurors successively, beginning immediately after the last of defendant's peremptory challenges had been used. He claims this resulted in a proportionately large number of Caucasians summoned for voir dire. Defendant did not offer specific names or statistics to support these general allegations. Williams particularly noted, however, that he did not observe the deputy shuffle the cards during jury selection. Although defendant did not attempt to draw a conclusion from these factors, he implicitly *1368 argues the cards bearing the names and addresses of the members of the jury pool were fixed in a manner such that the jury would consist of more white than black jurors. Defendant is a black male.
Greg McLean, the deputy sheriff entrusted with the jury pool cards, set forth the method of selection in use at the time of defendant's trial. He testified that the index cards were brought from the jury management office into open court. McLean shuffled the cards as the prospective jurors were brought into the courtroom. Each prospective juror was called as the card bearing his name was pulled from the top of the stack of index cards. He agreed that the cards were not reshuffled after each selection; indeed, care was taken to insure the cards remained in the original order. McLean denied any attempt to arrange the cards by race noting they bore no designation to make such arrangement possible.
The trial judge reconstructed the jury selection from notes he took during voir dire. He noted that thirty-three members of the thirty-six member pool were interviewed before the jury was complete. Twelve prospective jurors were summoned after defendant used his final peremptory challenge, and nine of those twelve persons were black. Five jurors were selected from this group, two of whom were black. The court opined the venire had been called in an indiscriminate order, chosen by lot, and denied defendant's motion to quash.
To support a challenge to the composition of a jury venire, the defendant must demonstrate that the state has not complied with the statutory procedures for the selection of the venire or that there has been systematic discrimination affecting a class of persons in the selection of the jury panel. State v. Perry, 420 So.2d 139 (La. 1982), cert. denied, 46 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983), McCray v. New York, 461 U.S. 961, 103 S.Ct. 2438, 77 L.Ed.2d 1322 (1983). La.Code Crim.P. art. 784 provides the method of selecting a jury panel, as follows:
In selecting a panel, names shall be drawn from the petit jury venire indiscriminately and by lot in open court in a manner to be determined by the court. In those judicial district courts, including the Criminal District Court for the parish of Orleans, wherein the use of a jury pool has been authorized by law, the petit jury panel shall be selected by random, indiscriminate choice in a manner to be determined by the rules of the court in which the jury panel is selected.
Use of a central jury pool has been authorized by law for the Nineteenth Judicial District Court. La.Code Crim.P. art. 409.4. Pursuant to this statutory authority, that court adopted Rule VIIGeneral Rules, providing for the administration of its central jury pool. The Louisiana Supreme Court has determined that this rule does provide for the random, indiscriminate choice of petit jury panels and, thus, on its face complies with art. 784. See, State v. Williams, 383 So.2d 996 (La.1979). Rule VII specifically requires that the petit jury shall be selected in accordance with law. Rule VII, § 2.2. The issue, then, is whether the procedure used by the trial court violated defendant's right to due process of law.
Defendant has not set forth his specific complaint with the procedure used by the trial court. We can infer from his arguments, however, that defendant's major concern lies in the fact that the cards from the jury management office were shuffled only once, and not continuously throughout jury selection.
Other than the selection being indiscriminate and by lot in open court, the procedure of selection from the petit jury venire is expressly left to the discretion of the trial court. State v. Bazile, 386 So.2d 349 (La.1980); State v. Hegwood, 345 So.2d 1179 (La.1977); See also, Comment, La. Code Crim.P. art. 784. Defendant did not attempt to prove that the single shuffling resulted in a less random selection than if the deputy had reshuffled the cards after each prospective juror was called; he merely implies that such would be the case. Similarly, defendant notes that the cards were kept in an unlocked desk in a courtroom *1369 which also may have been unlocked. Perhaps defendant intended to imply that an unknown person could have come into the courtroom and rearranged the cards by race. Defendant does not allege, however, that such conduct did occur. Since the testimony established that the cards bore no racial designation, the possibility of tampering appears virtually nil. In any event, defendant did not prove tampering occurred.
La.Code Crim.P. art. 419 provides that a general venire, grand jury venire or petit jury venire shall not be set aside for any reason unless fraud has been practiced or some great wrong committed that would work irreparable injury to the defendant. Challenges to the composition of the central jury pool are likewise governed by La.Code Crim.P. art. 419. See, State v. Jordan, 420 So.2d 420 (La.1982). Defendant bears the burden of establishing fraud or that some irreparable injury was caused by the selection process. State v. Brown, 414 So.2d 726 (La.1982).
Defendant does not allege that the selection was fraudulently managed and specifically noted he did not attribute bad faith or a bad motive to Deputy McLean. The proof he offered to establish the alleged pattern consisted of the recollection of Alfred Williams, one of two attorneys who represented defendant at trial, and very general testimony by Deputy McLean. The notes taken by the trial court depicted a situation contrary to that recollected by Williams. Further, Williams' co-counsel did not fully agree with facts set forth by him; and the testimony by Deputy McLean upon which defendant relies established only that a substantial number of white jurors were chosen at that time, but does not indicate that no blacks were called.
The evidence adduced at the hearing on defendant's motion to quash clearly established that the names of the jurors were chosen by lot. Defendant has neither alleged nor proven that fraud was exercised or that irreparable injury was caused by the selection process. Only three prospective jurors remained in the jury pool at the completion of the voir dire, and defendant was obviously accorded a jury drawn from a wide cross section of the community. This assignment of error has no merit.

CHALLENGE FOR CAUSE
By assignment of error number two, defendant submits the trial court erred in granting the state's challenge for cause of prospective juror Ernest Wilkinson. Wilkinson resided in the same neighborhood as the victim and was slightly acquainted with him. Wilkinson stated that he did not know the facts of the case but had heard gossip of the events. Although Wilkinson stated he would be able to act as a fair juror, the court granted the challenge based upon his residence in the neighborhood and knowledge of the victim.
Defendant argues the trial court erred in granting the challenge because the court's action did not comport with the provisions of La.Code Crim.P. art. 797, which provides, in pertinent part, as follows:
The state or the defendant may challenge a juror for cause on the ground that:
* * * * * *
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict; ....
The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint unless the effect of such ruling is the exercise by the state of more peremptory challenges than it is entitled to by law. La.Code Crim.P. art. 800; State v. James, 431 So.2d 399 (La.1983), cert. denied, 464 U.S. 908, 104 S.Ct. 263, 78 L.Ed.2d 247 (1983). Defendant has not shown that the state exhausted its peremptory challenges resulting in the prohibited effect of an excessive number of peremptory challenges being granted to the state. Unless this showing is made, defendant has no ground *1370 for complaint, even if the ruling allowing the state challenge was erroneous. State v. Vinet, 352 So.2d 684 (La.1977).
Moreover, we are not convinced the court erred in sustaining the state's challenge. A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably inferred. State v. Jones, 474 So.2d 919 (La.1985). Wilkinson candidly admitted he was privy to local gossip at the time of the offense and, presumably, affected by the very natural fears and questions aroused by such an extraordinary event which generated the neighborhood talk. The trial court inferred from his responses that it would be difficult for him to decide the case without consideration of his personal knowledge of the victim and his residence in the area where the murder occurred. Although residence in the area does not mandate that a juror be excused, see e.g. State v. Maduell, 326 So.2d 820 (La.1976), the trial judge is vested with broad discretion in ruling on a challenge for cause; and this ruling will not be disturbed on appeal absent a showing of abuse of that discretion. State v. Sylvester, 400 So.2d 640 (La.1981). We find no abuse of discretion herein.

ADMISSION OF DYING DECLARATION
By assignment of error number three, defendant urges the trial court erred in admitting defendant's dying declaration into evidence.
The state presented the testimony of Donald Breland, an emergency medical technician with Baton Rouge Ambulance Services. Breland was the first attendant to reach Shaw, and testified that he discovered the victim face down on the ground between his truck and the house. Shaw had several severe injuries about the head, including lacerations and depressions which appeared to be skull fractures. Breland testified the victim's blood pressure was very low and it appeared that he was going into shock; further, exposure to the cold and rain had resulted in hypothermia, a loss of body temperature. Breland testified he felt the victim was close to death.
Breland related that although the victim was unconscious at the time he was discovered, he regained consciousness on the way to the hospital. Over defendant's objection, Breland was permitted to testify that Shaw stated, "Those god damn niggers took my money." Defendant argues the statement was not admissible because the victim gave no indication he believed himself to be dying and the statement was thus inadmissible hearsay. He submits defendant was prejudiced by its admission because it eliminated the possibility that a Caucasian had committed the offense.
Hearsay evidence is testimony in court of a statement made out of court, the statement being offered as an assertion to show the truth of matters asserted therein, and thus resting for its value upon the credibility of the out-of-court asserter. State v. Trahan, 475 So.2d 1060 (La.1985). Hearsay evidence is inadmissible except as provided by law. La.R.S. 15:434. Dying declarations are admitted into evidence as an exception to the hearsay rule because the dead victim is not available to testify directly, and the murderer might otherwise escape justice. State v. Foote, 379 So.2d 1058 (La.1980).
A statement is admissible as a dying declaration if made when the declarant is conscious of his condition and aware of his approaching demise. State v. Verrett, 419 So.2d 455 (La.1982). However, the necessary state of mind may be inferred from the facts and circumstances surrounding the making of the declaration; and the victim need not express this belief in direct terms. Id. In Verrett, the Louisiana Supreme Court quoted the standard previously set forth in State v. Augustus, 129 La. 617, 56 So. 551 (1911), in pertinent part as follows:
... [W]hile no absolute rule can be laid down by which to decide with certainty whether the declarant, at the time of making his statement, really expected to die, yet when the wound is from its nature *1371 mortal, and when, as a matter of fact, the deceased shortly after making his statement died, the courts have uniformly held that the declarant really believed that death was impending, and his statement has been admitted as a dying declaration.
419 So.2d at 456. The court concluded that it is not sacramental that the victim declare that he feels the end is near if such belief may be reasonably presumed from the facts and circumstances surrounding the declaration.
We believe the trial court correctly determined that a sufficient foundation for the admission of the statement had been provided. Autopsy evidence presented before Breland's testimony established that defendant died of the head injury produced by a blow to the right side of the back of his head, which fractured his skull and damaged his brain. The attending physician testified that damage to the brain of this degree is a highly lethal type of injury. Thus, the state presented evidence that the victim's wounds, by their nature, were mortal, and that the victim died shortly after making his statement. We find the magnitude of the injuries and the circumstances surrounding the declaration and the victim's death establish an inferential basis for the finding that the victim was in fact, and believed himself to be, near death.
Defendant claims he was prejudiced by the admission of the statement because it eliminated all Caucasians as suspects. The meaning of this allegation is unclear. Perhaps defendant intended to allege that the probative value of this statement, even if it were admissible, was nonetheless outweighed by its prejudicial impact. Clearly, none of the counterbalancing factors generally considered in assessing the prejudicial impact of relevant evidence are applicable herein. See, e.g., State v. Brown, 428 So.2d 438 (La.1983); State v. Martin, 400 So.2d 1063 (La.1981). The victim's statement did not actually implicate defendant. Its admission was necessary, however, to prove that something of value was taken from the victim, an essential element of the offense of armed robbery. La.R.S. 14:64. The actual prejudicial impact on defendant was minimal, and the probative value great. This assignment of error has no merit.

ADMISSIBILITY OF HEARSAY TESTIMONY
By assignment of error number four, defendant submits the trial court erred in permitting a state witness, Lemontine Baunchand, to relate a telephone conversation he had with defendant in which defendant requested him to repudiate the testimony he gave before the grand jury. He claims the testimony was not admissible because a proper foundation had not been set forth and the statement, therefore, was excludable as hearsay.
One of the exceptions to the prohibition against the use of hearsay is that confessions and admissions are admissible. See, State v. Godeaux, 378 So.2d 941 (La.1979). An admission is a statement which does not admit guilt, but rather, acknowledges facts that tend to establish guilt. La.R.S. 15:449. Defendant's request of a witness to recant truthful and incriminating testimony against him clearly qualifies as an admission. The testimony, therefore, was admissible as an exception to the hearsay exclusionary rule.
Defendant objected as Baunchand began to relate the conversation and insisted that the basis for Baunchand's identification of defendant's voice be established. The state agreed to do so. Thereafter, Baunchand asserted that he knew defendant's voice; he had spoken to defendant several times around the neighborhood; he had no doubt whatsoever of the identity of the caller; the caller identified himself as "Kenny", the name by which the witness knew defendant; and the witness stated the voice and name were that of the person he identified in court as defendant. We find this testimony sufficiently demonstrates the witness' familiarity with defendant's voice. See, State v. Bodley; 394 So.2d 584 (La.1981); State v. Small, 427 So.2d 1254 (La.App. 2nd Cir.1983).

*1372 PREJUDICIAL REMARK
By assignment of error number six, defendant submits the prosecutor erred in referring to the fact that defendant's accomplice, James Penny, had been tried two weeks earlier.
Initially, we note that defendant has not made known to this court the action he desired the trial court to take nor an action of the court he finds objectionable. See, La.Code Crim.P. art. 841. Defendant requested and received an admonition to the jury to disregard the prosecutor's remarks referring to James Penny; he specifically rejected a mistrial.
In any event, we find no error in the proceedings. The prosecutor's remark was not within the mandatory mistrial provisions of La.Code Crim.P. art. 770. Thus, defendant was not entitled to relief beyond an admonition to disregard unless the trial court found he was prejudiced. We find it unlikely that the reference to Penny's trial is of such a nature that it might create prejudice against defendant as required by La.Code Crim.P. art. 771. Further, no reference was made to a conviction. See, State v. Williams, 445 So.2d 1171 (La. 1984); State v. Albert, 381 So.2d 424 (La. 1980). The trial court determined, and we agree, that the admonition to the jury was sufficient to assure defendant a fair trial.

ADMISSION OF EVIDENCE
By assignment of error number seven, defendant submits the trial court erred in permitting the state to introduce the oak stick alleged to be the murder weapon and a pistol allegedly stolen from the victim.
Defendant urges the court erred in finding a sufficient foundation for the stick to be admitted because no evidence was introduced to prove the stick was made of oak. We assume defendant finds a lack of connexity between the stick and the prosecution or a lack of sufficient identification of the stick. We are otherwise unaware of any basis for defendant's assumption that the state must prove the organic composition of its exhibits.
Demonstrative evidence can be admitted into evidence only after it is shown that, more probable than not, the evidence is connected to the case. That foundation can be laid by establishing a chain of custody of the evidence or by visual identification. Once that foundation is established, the weight to be given the evidence is a question for the jury. State v. Kirkley, 470 So.2d 1001 (La.App. 1st Cir.1985), writ denied, 475 So.2d 1105 (La. 1985), cert. denied, ___ U.S.___, 106 S.Ct. 808, 88 L.Ed.2d 783 (1986).
The stick, identified and admitted as state exhibit one, was initially examined by Dr. Paul McGarry, the physician who performed the autopsy of the victim. Dr. McGarry indicated the stick shown to him was the type of instrumentality that could have inflicted the wounds Shaw received.
Lemontine Baunchand testified that defendant owned two sticks, a long white one and a short black stick. He stated the long white stick was made of oak. Baunchand then identified state exhibit one as one of the sticks defendant owned and testified he had previously seen it in defendant's car.
Detective William Denicola, the officer who arrested defendant, identified the wooden stick as that seized from defendant's car pursuant to a search warrant. Denicola identified the stick visually and by his initials and those of Lt. Bud Connor, placed upon the stick when it was seized.
At trial, defense closely questioned Detective Denicola with regard to his knowledge of woods, and Denicola admitted he was not sure if the stick was oak. On appeal, defendant argues the identification of the stick was suspect because a material fact was not proven, viz., whether the stick was oak.
We find this argument without merit. Irrespective of its nature, the overwhelming evidence adduced at trial connected the stick with defendant and the instant offense. We find no error in the admission of state exhibit one.
Defendant also urges the gun, state exhibit two, was improperly admitted because it was never identified as the weapon carried *1373 by the victim and taken from him in the robbery.
Although several witnesses established that Joseph Shaw frequently carried a gun, defendant correctly asserts that the weapon introduced into evidence was not shown to be connected to the case. We fail to see, however, how defendant could have been prejudiced by its introduction. While the state perhaps sought to introduce the gun as a "fruit" of the crime, the state's witness, Baunchand, clearly testified that he did not know whether the gun shown to him by defendant was taken in the robbery. Other testimony offered at trial concerning the gun established only that it was seized from defendant's home and did not establish its origin. Thus, the impact of the evidence was minimal.
This court will not set aside a conviction in a criminal case on the ground of improper admission of evidence unless, in the opinion of the court, after an examination of the entire record, it appears that the error complained of has prejudiced defendant. La.Code Crim.P. art. 921; State v. Russell, 352 So.2d 1289 (La.1977); See, Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). We find no prejudice, and any error that might have occurred was harmless.
These assignments of error are without merit.
Therefore, the convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Defendant briefs an additional assignment of error, urging his conviction of both armed robbery and second degree murder constituted double jeopardy. This assignment was not filed in accordance with statutory procedures and thus is not properly before this court. See, La.Code Crim.P. art. 844.