544 So.2d 1222 (1989)
STATE of Louisiana
v.
Robert Michael HALLAL.
No. CR88-982.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1989.
*1225 William E. Tilley, Dist. Atty., Leesville, for defendant-appellant.
Tony C. Tillman, Leesville, for plaintiff-appellee.
Before GUIDRY, DOUCET and LABORDE, JJ.
GUIDRY, Judge.
On April 4, 1988, appellant, Robert Hallal, was charged by bill of information with two counts of armed robbery, a violation of La.R.S. 14:64. On May 13, 1988, a twelve person jury found appellant guilty as charged on both counts. Hallal was subsequently sentenced to concurrent prison terms of thirty years without benefit of probation, parole or suspension of sentence. Appellant now seeks review of his convictions and sentences based on nineteen *1226 assignments of error. Assignment number two has not been briefed and is considered abandoned. State v. Dewey, 408 So.2d 1255 (La.1982).

FACTS
During the afternoon of September 6, 1987, two persons dressed in military camouflaged clothing entered the Phoenix Drug Store in Leesville, Louisiana, and stood by the candy display until all customers had exited the business. At that time, one of the pair produced a sawed off shotgun and ordered the pharmacist, Don Goins, to the rear of the store where the pharmacy was located. The robber, who had a mustache and wore mirrored sunglasses, produced a plastic bag. Speaking in what Goins described as a "distinctive" voice, he instructed the pharmacist to fill the bag with Dilaudid and all other of the pharmacy's "Class A's". In the meantime, his cohort forced the cashier to surrender the currency in the cash register. After ordering the cashier to the rear of the store and the pharmacist into a storeroom, the pair fled. The police, with the help of Goins and his employee, later prepared composite sketches of the perpetrators of the crime.
On the morning of February 6, 1988, Goins was again working at the drug store with two other employees. A white male and a black male entered soon after the store opened. The black male produced a small silver handgun and ordered the two cashiers to surrender the money in the cash register. The white male proceeded to the pharmacy, grabbed Goins by the arm and pointed a sawed off shotgun at him. The assailant ordered Goins to the floor, gave him a plastic bag and asked for "Class A's", Dilaudid, Valium and cocaine. According to Goins, he recognized his assailant as the perpetrator of the earlier robbery by his distinctive voice, the expressions used, and because the gun used was identical. When this suspect diverted his attention to communicate with his cohort who was escorting the two cashiers toward the rear of the store, Goins escaped through a back door. The pair immediately fled through the entrance of the pharmacy.
Upon exiting onto the roadway behind the pharmacy, Goins encountered two Vernon Parish deputies. The officers had driven to the location because Calvin Wilson, an off-duty deputy, had earlier observed a white Chrysler automobile whose occupants were paying undue attention to the pharmacy, driving by, glancing and pointing in its direction. The investigating officers observed a white Chrysler automobile parked in front of the pharmacy. Other local law enforcement officers were dispatched to the general area. Officers investigating the incident requested a description of the suspects and were repeatedly informed by Goins that it was the same individual responsible for the earlier robbery. A Leesville police officer, Frank Rock, encountered an individual later identified as appellant, Robert Hallal, running from a bank parking lot. Hallal informed the officer two suspects were running in a northwesterly direction. Appellant then walked across the street and began conversing with a pedestrian.
About this time, Officer Tommy Landrum, who had joined in the search, was waved down by a motorist who informed him the suspects had separated and were running in different directions. Appellant was leaving the area as Calvin Wilson, who was cruising the area with a Vernon Parish deputy, recognized Hallal and informed Deputy Willis that appellant was the individual that he had observed earlier in the white Chrysler automobile. Upon returning to the area, Officer Rock witnessed appellant fleeing across railroad tracks. Appellant was later located in a nearby home and arrested along with a black male suspect.
After being transported to the Leesville police station and advised of his rights, appellant admitted his role in the robbery and informed officers that the black suspect in custody was not the individual who participated in the crime.
Officers searching the general vicinity around the pharmacy for evidence discovered a sawed off shotgun in an alley behind the PG-13 Club. A jacket with two shotgun *1227 shells in the pocket, and a cap and gloves were located in a drain at the side of a nearby building. Two days subsequent to the robbery, Goins positively identified appellant in a photographic line-up.

ASSIGNMENTS OF ERROR NOS. 1 AND 8
By these assigned errors, appellant contends the trial judge erred in denying a defense motion to suppress the pre-trial photographic identification of appellant by Goins. Appellant asserts the proceedure employed was unduly suggestive and that the photographic identification tainted the witness' in court identification which had an inadequate independent basis. Lastly, appellant argues that the trial court's ruling permitting introduction of the photographic line-up constitutes reversible error.
The defendant seeking to suppress a photographic identification has the burden of proving suggestiveness and the likelihood of misidentification. State v. Chaney, 423 So.2d 1092 (La.1982); State v. Cotton, 511 So.2d 1207 (La.App. 2d Cir. 1987). Although there exists no particular criteria for a photographic lineup, it will be deemed unduly suggestive if the identification procedure displays the defendant so singularly that the witness' attention is focused on defendant. The likelihood of misidentification must be established and weighed against the suggestive identification in light of the following factors:
(1) the witness' opportunity to view the criminal at the time of the crime;
(2) the witness' degree of attention;
(3) the accuracy of a prior description;
(4) the level of certainty exhibited at the identification; and
(5) the time between the crime and the identification.
State v. Savoy, 501 So.2d 819 (La.App. 4th Cir.1986), writ denied, 502 So.2d 576 (La. 1987). In those cases where a pretrial identification is impermissibly suggestive, an in court identification is admissible when it has an independent basis. State v. Winn, 412 So.2d 1337 (La.1982).
At the hearing on the motion to suppress, a police officer testified that no suggestions were made about which photograph depicted the individual suspected of committing the crime. This testimony was reiterated at trial by the officer as well as the victim. The six photographs presented to the victim in a folder were police department "mug shots". Five of the pictures depicted the subject from the chest up. The picture of appellant depicted him from the shoulders upward.
Although the picture of appellant is unique in depicting him from the shoulders up, there is sufficient resemblance of physical characteristics and features of the persons depicted in the other pictures to reasonably test the reliability of the identification. Each is a mustached, white male, approximately the same age. See State v. Robinson, 386 So.2d 1374 (La.1980) (yellow tint on defendant's photo not suggestive); State v. Sepcich, 473 So.2d 380 (La.App. 5th Cir.1985) (lighter background not suggestive); State v. Clark, 437 So.2d 879 (La.App. 2d Cir.1983), writ denied, 442 So.2d 460 (La.1983) (not suggestive where defendant clean shaven and others have some facial hair). Under the circumstances, the procedure used was not impermissibly suggestive.
Further, using the factors enunciated above, there was no substantial likelihood of misidentification. At each robbery, Goins was face to face with appellant in the interior of a well lighted store. Goins stated he had eye contact with the intruder and made approximately five sweeping glances at his face. The composite drawing prepared with Goins' help after the first robbery represents a relatively accurate depiction of appellant. Goins identified the photograph of appellant within ten seconds of exhibition of the lineup and his identification was unequivocal. Finally, the lineup occurred only two days after the second robbery. These factors support the trial court's determination that the circumstances surrounding the lineup show little likelihood of misidentification. Additionally, the in court identification has a sufficient independent basis untainted by the lineup.
*1228 Lastly, introduction of the photographs used in the lineup was relevant and admissible to show that the victim's in court identification was not tainted and to permit the jury to determine the weight to be afforded the identification. State v. Gilmore, 332 So.2d 256 (La.1976); State v. Hatch, 305 So.2d 497 (La.1974), cert. denied, 423 U.S. 842, 96 S.Ct. 76, 46 L.Ed.2d 63 (1975).
For the reasons stated, these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 3
By this assigned error, appellant alleges the trial court erred in denying a defense motion on the morning of trial for a continuance. Defense counsel argues that the failure of the prosecutor to timely comply with discovery by not producing police offense reports until the morning of trial resulted in an inability to discuss the information with appellant prior to trial and provided grounds for a continuance. Appellant emphasizes that only five weeks transpired between arraignment and trial, severely limiting defense counsel's ability to prepare a defense. Appellant also claims the unavailability of key alibi witnesses whose presence could be procured by a later trial date mandated a continuance. Finally, appellant points to defense counsel's assertion of unpreparedness during hearing on the motion to continue as evidence of ineffective assistance of counsel.
Appellant was arrested February 6, 1988. The record shows defense counsel action as early as February 18, 1988. Prior to filing of a bill of information, defense counsel filed a speedy trial motion on February 29, 1988. Appellant was formally charged and arraigned on April 4 and defense counsel filed discovery motions on April 12, 1988. State responses filed on April 28 and May 2, 1988, contained inculpatory statements and included the initial police report containing details of the robbery. After arguments concerning the status of the public records law, the State also produced supplemental police reports on May 13, 1988, the morning of trial. These reports presented no new evidence and were merely cumulative in the information they contained.
The granting or denial of a continuance is a matter within the sound discretion of the trial judge and will not be disturbed absent a showing of an abuse of discretion and a showing of prejudice. State v. Gaskin, 412 So.2d 1007 (La.1982). When the motion is grounded on insufficient time to prepare a defense, the preparation time must be so short as to undermine the basic fairness of the proceedings. State v. Jones, 395 So.2d 751 (La.1981).
The supplemental reports filed on the day of trial do not contain new information which would justify a continuance to modify defense strategy. The earlier discovery responses were filed sufficiently in advance of trial for preparation of the defense. Although only thirty-nine days expired between arraignment and trial, we note that defense counsel represented appellant at least forty-six days prior to arraignment and in fact sought a speedy trial thirty-five days prior to arraignment. Based on these time periods, the trial court properly ruled defense counsel had adequate time.
Appellant also argues that a continuance should have been granted based on the unavailability of witnesses who would provide an effective alibi defense. The written motion states these witnesses would testify to appellant's whereabouts on the date of the first robbery. At trial, defense counsel produced four witnesses who each testified to appellant's whereabouts at the time of the first robbery. Defense counsel failed to make the requisite showing of a probability that the missing witnesses would be available at a future trial date such that denial of the continuance was proper. La.C.Cr.P. art. 709; State v. Johnson, 440 So.2d 197 (La.App. 3rd Cir.1983), writ denied, 444 So.2d 1240 (La.1984). Furthermore, the denial of a continuance for the absence of a material witness is not an abuse of discretion where the testimony, as in this case, would merely be cumulative. State v. Hernandez, 513 *1229 So.2d 312 (La.App. 4th Cir.1987), writ denied, 516 So.2d 130 (La.1987).
Finally, appellant bases a claim of ineffective assistance of counsel on statements made by defense counsel while pursuing the motion for continuance. According to appellant, defense counsel's acknowledgement of lack of preparedness for trial establishes counsel violated a duty to his client and such violation prejudiced appellant.
A claim of ineffective assistance of counsel is properly raised in a petition for post-conviction relief. Where, however, the record contains evidence necessary to decide the issue and the alleged ineffectiveness is raised on appeal by an assignment of error, the issue should be considered. State v. Seiss, 428 So.2d 444 (La.1983). In reviewing a claim of ineffective assistance of counsel, a court should inquire whether counsel violated some duty to the client and, if so, determine whether the defendant was prejudiced in the case by such violation. State v. Hartman, 479 So.2d 948 (La.App. 3rd Cir.1985), writ denied, 486 So.2d 748 (La.1986), cert. denied, 479 U.S. 843, 107 S.Ct. 156, 93 L.Ed.2d 96 (1986). The performance and prejudice components of ineffectiveness require an inquiry of mixed questions of law and facts to determine if the trial can be relied on as having produced a just result. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
In a diligent effort to gain a continuance, counsel stated that he had inadequate time to prepare. However, counsel likewise stated he diligently represented appellant and sought a continuance based on time contraints and absent witnesses. As previoulsy mentioned, appellant was not prejudiced by failure to continue the trial. The record establishes defense counsel was well versed as to the facts of the case, effectively cross-examined state witnesses and presented an adequate defense to the charges. Therefore, appellant has established neither defective performance nor prejudice and the results of the trial can be relied upon as having produced a just result.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 4, 5, 6 AND 7
By these assignments of error, appellant insists the trial judge committed reversible error by denying defense challenges for cause of four prospective jurors. According to appellant, the responses of these persons during voir dire show an inability to render judgment impartially based upon relationships which would influence the juror in arriving at a verdict.
La.C.Cr.P. art. 797(2) and (3) provides:
"The state or the defendant may challenge a juror for cause on the ground that:

* * * * * *
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict."
The mere relationship between a prospective juror and a party named in La.C.Cr.P. art. 797(3) is not in itself grounds for a challenge for cause. The facts must reasonably lead to the conclusion that the relationship would influence the juror in arriving at a verdict. State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987), writ denied, 508 So.2d 65 (La.1987).
A challenge for cause should be granted, even if the juror declares an ability to remain impartial, when the juror's responses reveal facts from which bias, prejudice or impartiality may be reasonably implied. State v. Albert, 414 So.2d 680 (La.1982). A charge of juror bias may be *1230 removed if the prospective juror is rehabilitated, that is, if the court is satisfied that the juror can render an impartial verdict according to the evidence and instructions given by the court. State v. Gibson, 505 So.2d 237 (La.App. 3rd Cir.1987), writ denied, 508 So.2d 66 (La.1987); State v. Mills, supra. Likewise, no error is committed by a trial court's refusal to dismiss a juror who expressed some reservation about accepting the law when, after additional questioning, the juror assures the trial court he could apply the applicable law and give defendant a fair trial. State v. Munzy, 464 So.2d 1040 (La.App. 1st Cir.1985), writ denied, 468 So.2d 1203 (La.1985); State v. Pettaway, 450 So.2d 1345 (La.App. 2d Cir.1984), writ denied, 456 So.2d 171 (La.1984). The trial judge is afforded wide discretion in ruling on challenges for cause and a ruling should not be disturbed absent an abuse of discretion. State v. Baker, 528 So.2d 776 (La.App. 3rd Cir.1988); State v. Wiggins, 518 So.2d 543 (La.App. 5th Cir. 1987); State v. Jones, 474 So.2d 919 (La. 1985), cert. denied, 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986).
Prospective juror, Nelda Self, testified she knew the victim as well as his family and that the relationship would make it difficult to serve on the jury. Self stated the victim was a consultant for a hospital at which she was employed. According to Self, there existed a possibility that she "would tend to listen to Mr. Goins maybe more so than anyone else". During later questioning, Self acknowledged appellant was innocent until guilt was established beyond a reasonable doubt, accepted appellant's privilege against self-incrimination and indicated that she could accept from the judge the law applicable to the case. Self indicated she possessed no preconceived opinion of guilt or innocence and unequivocally stated she could be fair and impartial. See State v. Wiggins, supra; State v. Thompson, 489 So.2d 1364 (La. App. 1st Cir.1986).
Appellant asserts the juror's relationship with the victim is such that it is reasonable to conclude the relationship would influence the verdict. However, this juror's responses do not reveal facts from which partiality may reasonably be implied. The juror terminated by accepting various legal concepts and assuring the court she could give appellant a fair trial. Under the circumstances, we find the trial judge did not abuse his wide discretion in denying appellant's challenge for cause.
A second prospective juror, Shirley Wilson, informed the court that her husband was a Vernon Parish deputy and that she "knew" various officers scheduled to testify at trial. Mrs. Wilson acknowledged that her husband had nothing whatever to do with this case. Wilson testified to hearing about the case and felt this knowledge could cause difficulty in her being impartial. Wilson explained that her relationship with the officers scheduled to testify was based on their association with her husband and that she had few dealings with them. Wilson assured the court her relationship with her spouse would not cause partiality. Wilson accepted the presumption of innocence, appellant's privilege against self-incrimination and stated she would try to be fair and impartial. Finally, Wilson expressed an ability to follow the law as dictated by the court and stated she had no opinion as to appellant's guilt or innocence.
Where a challenge for cause is based on the juror's relationship with law enforcement officers, the situation calls for close scrutiny but does not automatically disqualify the potential juror. Only where the relationship leads to the reasonable conclusion that the juror would be influenced in arriving at a verdict should a challenge for cause be granted. State v. Williams, 524 So.2d 1221 (La.App. 3rd Cir.1988); State v. Comeaux, 514 So.2d 84 (La.1987). Although this potential juror equivocated during initial questioning, the juror expressed an ability to follow the law and accepted the State's burden of proof. The trial judge is in the best position to determine whether the juror could apply the law and provide appellant a fair trial. We find the trial judge's ruling to be supported by the juror's statements and does not represent an abuse of discretion.
*1231 The third prospective juror, Robert Richardson, testified his mother is a personal friend of the victim. Richardson stated that any decision on the facts would be determined by evidence presented at trial. Although he expressed an opinion that appellant was guilty, the juror stated this preconception would yield to the evidence and the law. The juror stated he would be able to return a not guilty verdict if the State failed to establish guilt beyond a reasonable doubt. Richardson also stated that a deputy scheduled to testify worked security with the juror's mother. Although he stated this relationship could influence his assessment of credibility, Richardson later expressed an ability to assess a witness' credibility based on testimony and evidence presented. Richardson also stated that his personal relationship with the victim might be troublesome but later acknowledged this "relationship" consisted of shopping in the store some five to six months prior to trial. At various points throughout voir dire, this prospective juror acknowledged the presumption of innocence, stated there was no reason why he could not be fair and promised to hold the State to its burden of proof. The juror stated he would be a fair and impartial juror.
In denying the challenge for cause, the trial court stated that the juror had attempted to be excused earlier without success. The trial judge focused on the juror's response that any preconceived opinion would yield to the evidence and the law in denying the challenge for cause. Lastly, the trial judge felt the juror's relationships with the victim and one of the officers were attenuated and would not influence his verdict. Keeping in mind the trial judge's broad discretion, we find the denial of defense counsel's challenge not to be an abuse of discretion. The potential juror was rehabilitated by questioning and unequivocally stated his prior opinion of guilt was not so fixed that he could not render a verdict of not guilty. State v. Isaac, 487 So.2d 565 (La.App. 4th Cir.1986); State v. Wiggins, supra; State v. Morris, 429 So.2d 111 (La.1983).
Lela Herrington, the fourth juror challenged for cause, acknowledged a general knowledge of the case from media reports but had no opinion in the matter. The juror stated she knew the victim and his family well as a lifelong resident of Vernon Parish. Although the juror felt she would give added credibility to the victim's testimony and stated her familiarity with his family might influence her verdict "a little bit", the juror stated she had never visited the victim's home nor was she affiliated in the same social clubs. The "relationship" referred to by Herrington arose from her employment as a cook in a school where the victim's wife teaches. Herrington testified that she had no opinion as to appellant's guilt or innocence and, in questioning by the court, agreed to base her verdict on evidence presented at trial and to follow the law as provided by the court. Finally, the juror expressed an appreciation of the presumption of innocence, the privilege against self-incrimination and promised to hold the State to its burden of proof. See State v. Thompson, supra; State v. Balfa, 485 So.2d 264 (La.App. 3rd Cir.1986).
The relationships involved in the instant situation do not lead to a conclusion that Herrington would be influenced in arriving at a verdict. Although some initial responses did suggest partiality, the court rehabilitated the juror in questioning which satisfied the trial judge that the juror could render an impartial verdict according to the law given by the court and the evidence. Again, discretion is granted the trial court to rule on challenges for cause because the trial judge is in the best position to determine the veracity of a potential juror. We likewise find no abuse of discretion in the case of juror Herrington.
For the reasons stated, these assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 10
Appellant contends the trial judge erred in allowing the victim, Don Goins, to testify as an expert in voice identification. Appellant argues the testimony of Goins concerning "distinctive" features *1232 and "inflections" in the voice of appellant was improper for a non-expert. Furthermore, appellant argues that it was improper for the victim to express an opinion based on identification of voice that appellant committed the September 6, 1987 armed robbery.
At trial, Goins testified concerning the facts of the two robberies. Goins stated that on each occasion he was ordered to the floor by an individual holding the same sawed off shotgun. The person used the same obscene adjective to describe the floor. At both robberies, the gunman produced a plastic bag and ordered the pharmacist to surrender "Class A's" and Dilaudid. The victim testified to the infrequent use of the term "Class A's". Additionally, Goins stated that the "inflection" in the voice of the robber was "distinctive". Based on his association with students from New Orleans while at LSU, Goins described the voice as "South Louisiana, New Orleans, french-type inflection". The victim made this inference from "[t]he way it is said, the way it rolls out of the mouth, the inflection in the voice, the emphasis that comes on it". The victim positively identified appellant as the perpetrator of the first offense based on the words used "in describing the floor", the narcotics requested in uncommon terms and because the same weapon was used at both offenses.
Generally, a witness may testify only to facts within his knowledge and may not testify as to any impression or opinion that he may have. However, where the subject of the testimony is such that a person of ordinary experience may make a natural inference from observed facts, a lay witness may testify as to such inferences. In such cases, the witness must state the observed facts upon which the inference is based. State v. Moten, 510 So.2d 55 (La. App. 1st Cir.1987), writ denied, 514 So.2d 126 (La.1987); State v. Prater, 337 So.2d 1107 (La.1976).
In the instant case, the identification by the victim of appellant as a participant in the September 6, 1987 robbery was based on several factors, one of which was identification by voice. Additionally, the victim identified appellant by similarties in modus operandi between the two incidents and by positively identifying the weapons used in the two robberies. Voice identification constitutes a problem of authentication rather than a problem of a lay witness' competency to identify a voice. State v. Green, 448 So.2d 782 (La.App. 2d Cir.1984). Under the circumstances, the testimony of the victim that appellant committed both robberies constituted a natural inference from facts personally observed during the two robberies. The witness stated the factors upon which the inference is based. The fact that identification of appellant as the perpetrator of the September 6, 1987 robbery is based largely on recognition of his voice during a robbery five months later should go to the weight afforded the identification as opposed to its admissibility. See State v. Weigel, 228 Kan. 194, 195, 612 P.2d 636 (1980); U.S. v. Ladd, 527 F.2d 1341 (5th Cir.1976).
For these reasons, this assignment of error has no merit.

ASSIGNMENTS OF ERROR NOS. 9, 11-17
By these assignments of error, appellant insists various pieces of physical evidence should have been excluded on the grounds of irrelevancy and insufficient chain of custody. The contested evidence includes shoes taken from appellant on the date of his arrest, a sawed off .410 shotgun, a jacket, a pair of gloves, a hat and shotgun shells removed from the gun and the jacket.
To admit demonstrative evidence at trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it was offered in evidence. For the admission of demonstrative evidence, it suffices if the foundation laid establishes that it is more probable than not that the object is relevant to the case. State v. *1233 Battista, 517 So.2d 1096 (La.App. 3rd Cir. 1987). Lack of positive identification goes to the weight of the evidence rather than to its admissibility. Ultimately, connexity is a factual matter for determination by the trier of fact. State v. Everett, 530 So.2d 615, 620 (La.App. 3rd Cir.1988); State v. Wilson, 517 So.2d 865 (La.App. 3rd Cir. 1987); State v. Brown, 507 So.2d 304 (La. App. 3rd Cir.1987). Also, in order to be admitted at trial, evidence must be relevant to a material issue. La.R.S. 15:435; State v. LeBlanc, 517 So.2d 951 (La.App. 3rd Cir.1987), writ granted in part, denied in part, 519 So.2d 123 (La.1988). Evidence which tends to show the commission of the offense is relevant. State v. Freeman, 447 So.2d 1145 (La.App. 3rd Cir.1984), writ denied, 449 So.2d 1356 (La.1984). Relevancy is determined by the purpose for which the evidence is offered. La.R.S. 15:442. The determination of relevance falls within the trial judge's discretion and should not be disturbed absent a manifest abuse of discretion. State v. Brown, 522 So.2d 1110 (La.App. 1st Cir.1988); State v. Caldwell, 504 So.2d 853 (La.1987).
Shoes
In the instant case, Officer Landrum testified he took the shoes appellant was wearing at the time of his arrest and transferred them to Officer Massey. Massey testified that he maintained continued possession of the shoes as custodian of the Leesville evidence room. The relevancy of these items was clearly established when the victim unequivocably identified the shoes as those worn by the robber. For these reasons, the admission of the shoes into evidence does not give rise to a valid objection based either upon chain of custody or relevancy.
Shotgun
At trial, the victim testified appellant used a sawed off shotgun during the robberies. Witnesses placed appellant in the area of the Leesville Leader office shortly after the February 6, 1988 robbery, and appellant subsequently admitted participation in the crime. Officer Meadows was assigned to conduct a search of the general area after appellant's arrest and discovered a sawed off .410 behind the Leesville Leader in an area about fifty yards from the entrance to the drugstore. The gun was secured by Officer Landrum. A shell was taken from the weapon, these two items were placed in a plastic bag and turned over to Massey. Massey scratched his initials on the weapon. As custodian of evidence, Massey testified to having continuous custody of these items until they were delivered to the crime lab. Massey retrieved the weapon and shell the day prior to trial. Although Goins could not positively identify this weapon as the one used in the robbery, the proximity in time and distance from the robbery and the fact that the weapon matches the type of weapon described by Goins make the evidence relevant.
The State adequately identified the weapon by chain of custody. It is more probable than not that the evidence is relevant to the case. Finally, the inability of the victim to positively identify the weapon affects the weight and not the admissibility of the shotgun and shell. Therefore, the admission of these items does not constitute an abuse of the trial court's discretion.
Jacket, Shells, Gloves, Cap
Officer Copeland testified at trial that he discovered these items in a drain next to the Leesville Leader office. The shells were .410 gauge and were inside a pocket of the grey jacket. This officer initialed these pieces of evidence and turned them over to Massey. These items were retained in Massey's possession until trial. Again, no witness positively identified the jacket, gloves or hat as having been worn by appellant. However, both appellant and his cohort were seen wearing jackets prior to and during the robbery. When appellant was arrested he was not wearing a jacket. The cohort was observed wearing a dark cap during the robbery. The victim stated appellant wore gloves during the robbery although he was unable to identify them.
Appellant argues these items are inadmissible because they were neither seized *1234 from appellant or from the scene of the crime. However, it is within the court's discretion to determine whether there exists sufficient connexity to allow introduction of evidence. As mentioned previously, these items were seized shortly after the robbery in an area near the drugstore. The chain of custody demonstrates the items presented at trial were those discovered by Copeland. The evidence tends to establish that the robbers, in their attempt to escape arrest, discarded items of clothing by which they might be identified. These items were found very close to an abandoned .410 shotgun, the relevancy of which has been upheld. Two .410 shells were found in the jacket. These items tend to show commission of the offense charged and the chain of custody is adequate. See State v. Brown, 507 So.2d 304 (La.App. 3rd Cir.1987). Therefore, there appears to be no error in the trial court's ruling.
For these reasons, we find no merit to these assigned errors.

ASSIGNMENT OF ERROR NO. 18
Appellant contends the evidence presented at trial fails to establish that he was the individual who committed the charged offenses.
The proper standard of review in determining the sufficiency of evidence is whether any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the offense proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Richards, 426 So.2d 1314 (La.1982). When the key issue is not whether the crimes had been committed, but whether the defendant is the perpetrator, the State must negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Smith, 430 So.2d 31 (La.1983); State v. Brady, 414 So.2d 364 (La.1982).
Initially, it can be stated as to both robberies that the evidence clearly establishes the elements of La.R.S. 14:64 defining armed robbery. On each occasion, the offender (1) took a thing of value belonging to another, (2) which was in the immediate control of another, (3) using force and intimidation, and (4) while armed with a dangerous weapon.
As to the February 6, 1988 robbery, the State called three police officers who testified appellant confessed to the robbery after his arrest. Additionally, the victim positively identified appellant both in court and at a photographic lineup prior to trial. The victim stated he scanned appellant's face about five times and was consciously attempting to record factors for later identification. The victim likewise positively identified shoes taken from appellant immediately after his arrest as those worn by the person holding the shotgun and forcing him to surrender narcotics. Finally, another officer identified appellant as the operator of the vehicle abandoned in front of the pharmacy as the robbers fled.
Considering the evidence presented at trial in a light most favorable to the prosecution, there exists no likelihood appellant was misidentified as the perpetrator of the February 6, 1988 armed robbery.
To prove that appellant committed the September 6, 1987 armed robbery, the prosecution relied on the victim's testimony identifying appellant as the offender. The witness was not only able to identify the defendant by his looks but also because he was positive the voice of the February 1988 offender was identical to the voice of the September 6, 1987 perpetrator. The victim reported this belief to investigating officers immediately after the offense. Additionally, the victim based his unequivocal identification of appellant upon the similar modus operandi used in the robberies, i.e., the type of narcotics requested, the terms used, and because the same gun was used in both crimes. After the first robbery, the victim formulated a composite sketch of the offender based on eye contact and observation of the offender's face. Although the cashier present at the first robbery observed the offender on two short occasions, she declined to prepare a composite because she felt the previous composite accurately depicted the offender. At trial, the *1235 cashier made a positive in court identification of appellant.
Despite presentation of alibi witnesses who placed appellant at a Toledo Bend campground on the date and at the general time period of the first offense, it is apparent the jury chose to believe the State witnesses rather than the alibi witnesses. Resolution of such conflicting testimony regarding factual matters lies within the sound discretion of the trier of fact. State v. Klar, 400 So.2d 610 (La.1981).
The composite sketch prepared by the victim subsequent to the first robbery represents a reasonably accurate depiction of appellant's facial features. The perpetrator in the first robbery used the same modus operandi as the perpetrator of the later robbery. The victim was unequivocal in his conviction that the same weapon was used on each occasion. He expressed no uncertainty that the voice of the earlier offender was that of appellant and informed officers of this fact immediately following the second robbery. Most importantly, the cashier, who spoke with the first offender prior to the robbery, positively identified appellant. Positive identification by a single witness can be sufficient to support a criminal conviction. State v. Williams, 458 So.2d 1315 (La.App. 1st Cir. 1984), writ denied, 463 So.2d 1317 (La. 1985). Considering both the pharmacist's and the cashier's identification, the victim's voice identification and similarity of methodology in the two offenses, we find there to be no substantial likelihood that appellant was misidentified as the offender in the September 6, 1987 armed robbery.
For these reasons, this assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 19
By this assignment of error, appellant argues that the trial judge failed to adequately articulate reasons for sentencing and imposed an excessive sentence.
La.C.Cr.P. art. 894.1 provides criteria for consideration in determining the length of sentence to be imposed and mandates that the trial court shall state for the record the factual basis therefor in imposing sentence. State v. Cox, 369 So.2d 118 (La.1979); State v. Sepulvado, 367 So.2d 762 (La. 1979). The sentencing judge need not articulate every mitigating and aggravating circumstance, however, the record should reflect that the sentencing judge considered the guidelines in particularizing the sentence. State v. Aucoin, 500 So.2d 921 (La.App. 3rd Cir.1987). A sentence imposed by the trial court which falls within statutory limitations may still be unconstitutionally excessive. State v. Sepulvado, supra. A sentence is deemed excessive if it (1) makes no measurable contribution to acceptable penal goals and therefore is nothing more than a purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime. State v. Cann, 471 So.2d 701 (La.1985); State v. Landry, 502 So.2d 281 (La.App. 3rd Cir.1987), writ denied, 508 So.2d 63 (La.1987). The trial court is given wide discretion in imposing sentence and a sentence imposed within statutory limits will not be deemed excessive in the absence of abuse of discretion. State v. Howard, 414 So.2d 1210 (La.1982).
In sentencing the defendant in the instant case, the trial court relied on a pre-sentence investigation report which exhibited a history of criminal arrests and convictions over a twenty year period. The trial judge noted the facts of the instant offenses demonstrated extreme danger to the victims by appellant's actions. The court reviewed various sentencing factors finding no inducement, provocation or grounds to excuse or mitigate the conduct. The court noted the economic and severe psycological costs to the victims and the unlikelihood of restitution. Finally, in imposing concurrent thirty year sentences without benefit of parole, probation, or suspension of sentence, the court found appellant's criminal activity to be recurring.
The sentencing judge adequately considered the provisions of La.C.Cr.P. art. 894.1 and thoroughly articulated the reasons and factual basis for the sentence. Appellant has a history demonstrating consistent, recurring and systematic violation of law including prior battery, simple robbery *1236 and armed robbery convictions. His record exhibits criminal activity during periods of probated sentence. Appellant was exposed to potential jail terms of consecutive 99 year sentences without benefit of parole, probation or suspension of sentence on each count. The sentence imposed lies in the lower third of sentencing alternatives on any one count and is considerably less than the statutory maximum. The sentence imposed was individualized to appellant, is not so disproportionate to the severity of the crime to shock our sense of justice and does not constitute an abuse of the trial judge's discretion. Therefore, this assignment of error has no merit.
Accordingly, for the reasons stated, appellant's convictions and the sentences imposed are affirmed.
AFFIRMED.