STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

12-204

STATE OF LOUISIANA

VERSUS

JODY D. HAMILTON

**********

ON REMAND FROM THE SUPREME COURT
ORIGINALLY APPEALED FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. C16173
HONORABLE ERIC R. HARRINGTON, DISTRICT JUDGE

**********

**PHYLLIS M. KEATY
JUDGE**

**********

Court composed of Sylvia R. Cooks, Marc T. Amy, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Van Hardin Kyzar**
**District Attorney**
**Charles W. Seaman**
**Assistant District Attorney**
**Post Office Box 838**
**Natchitoches, Louisiana 71458-0838**
**(318) 357-2214**
**Counsel forAppellee:**
        **State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**Post Office Box 1747**
**Lake Charles, Louisiana  70602-1747**
**(337) 436-2900**
**Counsel for Defendant/Appellant:**
      **Jody D. Hamilton**

**Jody D. Hamilton**
**In Proper Person**
**Louisiana State Penitentiary**
**Camp C Tiger Unit 4-Right**
**Angola, Louisiana  70712**
**Defendant**

**KEATY, Judge.**

Defendant appeals his convictions and sentences for second degree murder and attempted second degree murder. For the following reasons, we affirm.

## PROCEDURAL BACKGROUND

Defendant, Jody D. Hamilton, entered into a plan with Demarcus Law and Edward Paige to steal drugs from someone else. On December 12, 2009, Defendant and Law went to the residence where the drugs were located, and Law kicked in the door. Defendant then shot Dakaria Williams, who was in the living room, in the leg. Law proceeded to the kitchen where Paige and Shamichael Berryman were and began shooting. Defendant shot Williams several more times but never entered the residence. When leaving the residence, Law noticed Williams was still moving and shot him in the face. Berryman was shot six times and died as a result of his injuries. Williams, who had been shot at least nine times, survived.

Defendant was charged in an indictment with one count of second degree murder, a violation of La.R.S. 14:30.1, and one count of attempted second degree murder, a violation of La.R.S. 14:30.1 and La.R.S. 14:27. Defendant entered a plea of not guilty, and this matter proceeded to trial by jury on September 19, 2011. The jury found Defendant guilty as charged, and he was sentenced as follows: life imprisonment at hard labor, without benefit of probation, parole, or suspension of sentence, for second degree murder and fifty years at hard labor for attempted second degree murder, with eighty percent of that sentence to be served without benefit of parole. The trial court ordered the sentences to run consecutively. A motion for appeal was filed on the same date Defendant was sentenced and was subsequently granted.

Defendant appealed and asserted four assignments of error. He contended that: (1) the trial court erred in denying challenges for cause of potential jurors; (2) he was denied the right to full review on appeal because the record was incomplete; (3) the jury instructions incorrectly included the phrase "or to inflict great bodily harm" within the attempted second degree murder charge; and (4) the trial court erred in admitting two firearms into evidence because the weapons were not connected to him.

After reviewing Defendant's appeal, this court addressed only his second assignment of error and found that Defendant was denied, based on an incomplete record, the right to full review of the jury selection process. Therefore, we vacated his convictions and sentences without addressing his remaining three assignments of error. In reaching our conclusion, we noted that while the record contained the transcript of voir dire, the transcript did not include in-chambers discussions regarding the exercise of cause and peremptory challenges. Additionally, minute entries failed to indicate which side excused prospective jurors and why. The record was also uncertain as to how many cause challenges Defendant made unsuccessfully. *See State v. Hamilton*, 12-204 (La.App. 3 Cir. 11/7/12), 103 So.2d 705.

The supreme court vacated this court's ruling and remanded the matter for further consideration. The supreme court directed this court to supplement the record with the jury strike sheets, which the State requested in its application for rehearing filed in this court. The supreme court also directed this court to reconsider the Defendant's assignments of error relating to the denial of his cause challenges by the trial court and the denial of his right to full review on appeal because of the incomplete record. *See State v. Hamilton*, 13-104 (La. 6/28/13), 117 So.3d 95.

2

In light of the supreme court's ruling, we will reconsider Defendant's four assignments of error asserted in his original appellate brief.

## DISCUSSION

On appeal and as discussed above, Defendant asserts four assignments of error. We will address each assignment of error below.

## I.    Errors Patent

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed for errors patent on the face of the record. After reviewing the record, there is one error patent.

At sentencing, the trial court stated in pertinent part: "On the charge of attempted second-degree murder, you are sentenced to 50 years at hard labor, 80% of which is to be served before you are eligible for parole."

At the time of the commission of the crime, La.R.S. 14:30.1 provided a penalty of life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. Additionally, La.R.S. 14:27 provided that if the offense attempted was punishable by life imprisonment, as in this case, the penalty was ten to fifty years at hard labor without the benefit of probation, parole, or suspension of sentence. Consequently, the trial court imposed an illegally lenient sentence by stating that only eighty percent of the attempted second degree murder sentence would be served before parole eligibility. However, this court will not ordinarily consider an illegally lenient sentence unless it is raised error. We do not do so under the present circumstances.

## II.    Assignment of Error Number One

In his first assignment of error, Defendant contends the trial court erred in denying cause challenges of prospective jurors thereby depriving him of his constitutional right to a fair and impartial jury.

The United States Constitution's Sixth Amendment guarantees the accused the right to a trial by an impartial jury. The Louisiana Constitution Article I, Section 17(A) provides that a defendant has a right to challenge jurors peremptorily, with the number being fixed by law at twelve. When a defendant uses all of his peremptory challenges, a trial judge's erroneous ruling depriving him of one of his peremptory challenges constitutes a substantial violation of his constitutional and statutory rights, requiring reversal of the conviction and sentence. A trial court is vested with broad discretion in ruling on challenges for cause, and its rulings will be reversed only when a review of the entire voir dire reveals the trial judge abused its discretion. Prejudice is presumed when a challenge for cause is erroneously denied by a trial court and the defendant has exhausted his peremptory challenges. An erroneous ruling depriving an accused of a peremptory challenge is a substantial violation of his constitutional and statutory rights and constitutes reversible error.

"A challenge for cause should be granted, even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably implied." However, a trial court does not abuse its discretion when it refuses to excuse a prospective juror on the ground he is not impartial where, after further inquiry or instruction, the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and evidence. Thus, to establish reversible error warranting reversal of a conviction and sentence, defendant must demonstrate "(1) erroneous denial of a challenge for cause; and (2) the use of all his peremptory challenges." In the instant case, it is undisputed that defense counsel exhausted his peremptory challenges, and, therefore, need only show that the trial court abused its discretion by denying a challenge for cause.

*State v. Odenbaugh*, 10-268, pp. 23-25 (La. 12/6/11), 82 So.3d 215, 236-37, *cert. denied*, __ U.S. __, 133 S.Ct. 410 (2012) (citations omitted).

According to La.Code Crim.P. art. 797, the State or Defendant may challenge a prospective juror for cause on the ground that:

(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;

(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such

that it is reasonable to conclude that it would influence the juror in arriving at a verdict;

(4) The juror will not accept the law as given to him by the court.

In *Odenbaugh*, 82 So.3d at 238 (citations omitted), the supreme court further stated:

[W]hile cognizant of the broad discretion afforded a district court when ruling on cause challenges, this Court has cautioned that a prospective juror's responses cannot be considered in isolation and that a challenge should be granted, "even when a prospective juror declares his ability to remain impartial, if the juror's responses as a whole reveal facts from which bias, prejudice or inability to render judgment according to law may be reasonably [inferred]."

In the present case, the jury strike sheets indicate that Defendant used twelve of his peremptory challenges when selecting the jury and one peremptory challenge during the selection of alternate jurors. Accordingly, Defendant may properly challenge the denial of his cause challenges. In that regard, Defendant argues that the trial court incorrectly denied cause challenges to prospective jurors Stacy Iskenderian, Linda Venable, and Theresa Garrett.

**A. Iskenderian**

During voir dire, Iskenderian was questioned by the State and said she knew the deceased victim, Berryman. She stated that she grew up with Berryman, they went to school together, and she saw him socially. She testified that their fathers were good friends and Berryman often visited her home with his father. She stated that she "[s]omewhat" saw him up until the time of his death, and she considered him a friend.

The jury panel on which Iskenderian sat was asked by the trial court if there was "any reason whatsoever why any of you could not give both the defendant and the State a fair trial, and decide this case based solely upon the evidence presented

5

and in accordance with the law." There was no response from any of the prospective jurors.

Iskenderian was subsequently questioned by defense counsel and stated she still knew Berryman's family. Iskenderian was further questioned as follows:

MR. METHVIN: If the prosecution didn't prove their case beyond a reasonable doubt, would you have problems being around his family?

. . . .

MS. ISKENDERIAN: No, no I wouldn't.

MR. METHVIN: Okay, even though you have this long history with Mr. Berryman, who's deceased?

MS. ISKENDERIAN: Yes.

When asserting his objections to jury selection, defense counsel objected to the denial of a challenge for cause to "Ms. Shay (sic) . . . on the grounds that she was bias, given her family relationship with the Berryman family."[1] The State argued that she rehabilitated herself as she had not seen Berryman in "a good while" and said she could be fair and impartial. The trial court recalled that she had not been in close contact with "them" for a while and said she could be fair and impartial, and it was "comfortable with that fact." Defense counsel then noted for the record that he used a peremptory challenge to exclude her.

In *State v. Sonnier*, 379 So.2d 1336 (La.1979), the defendant was found guilty of two counts of first degree murder and was sentenced to death. On appeal, the defendant argued that the trial court erred in failing to grant a challenge for cause as to prospective juror Flossie Berard on the basis of La.Code Crim.P. art. 797(3). During voir dire, it was determined that Berard's niece was married to the brother of one of the victims, Loretta Bourque. Berard's mother and father were

---

[1] This court, as well as appellate counsel, assumes that the parties were discussing prospective juror Iskenderian.

6

friends with the family of the other victim, David LeBlanc, and she had known LeBlanc since he was a baby. At the time LeBlanc was killed, he was employed by another of Berard's brothers. Additionally, at that time, Berard's brother was serving as the sheriff of St. Martin Parish, the parish where the abductions occurred.

The supreme court in *Sonnier*, 379 So.2d at 1351 (citations omitted), was unable to conclude that the trial court abused its discretion in denying the challenge for cause and stated the following:

> Our reading of the voir dire examination as a whole discloses that Mrs. Berard showed herself to be an educated, intelligent and reasonably articulate individual who was quite candid in admitting the connection she had with the victims. She also acknowledged that her brother was the Sheriff in neighboring St. Martin Parish. However, throughout the entire voir dire she was unequivocal in her statements that she had no preformulated opinions of guilt, that she could decide the case solely upon the evidence presented in court and that she did not feel any pressure from anyone outside the courtroom which might influence her judgment.
>
> The fact that a prospective juror knows the victim of an offense is not in itself sufficient grounds for a challenge for cause under Article 797. The defense must show that the juror's acquaintance with the victim is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict.

In *State v. Brown*, 496 So.2d 261 (La.1986), a prospective juror indicated her son had gone to high school with the victim for three years, and the victim had visited her home on several occasions. The prospective juror also knew the victim's parents and indicated it would be difficult to face them if she voted not guilty. She further indicated that this would influence her in the jury room, and it would be very hard for her to be impartial. The supreme court found that even though the prospective juror stated she could give the defendant a fair trial, it was unrealistic to conclude her relationship with the victim and the victim's family would not affect her deliberations in reaching a verdict. Thus, the supreme court

held that the trial court improperly denied the defendant's request to excuse the prospective juror for cause.

In *State v. Gibson*, 505 So.2d 237 (La.App. 3 Cir.), *writ denied*, 508 So.2d 66 (La.1987), the prospective juror was a social acquaintance of the victim, had previously spoken to the victim, and was good friends with the victim's family. When questioned during voir dire, the prospective juror stated that he would have no problem being on the jury, he could put the fact that he knew the victim and the victim's family out of his mind, he could decide the case solely on the evidence he would hear, he could find the defendant not guilty if the State failed to prove its case beyond a reasonable doubt, and he could be fair and impartial. This court found that the trial court did not abuse its discretion when denying the defendant's challenge for cause as to this prospective juror.

In *State v. Hallal*, 544 So.2d 1222 (La.App. 3 Cir. 1989), *rev'd on other grounds*, 557 So.2d 1388 (La.1990), a prospective juror stated that she knew the victim as well as his family, and that relationship would make it difficult to serve on the jury. She also indicated that she possessed no preconceived opinion of guilt or innocence and unequivocally stated she could be fair and impartial. On appeal, the defendant asserted the prospective juror's relationship with the victim was such that it was reasonable to conclude the relationship would influence the verdict. This court found that the prospective juror's responses did not reveal facts from which partiality could reasonably be implied. This court stated that the prospective juror accepted various legal concepts and assured the trial court she could give the defendant a fair trial. Thus, this court found that the trial court did not abuse its discretion in denying the defendant's challenge for cause.

After reviewing the foregoing law and jurisprudence in relation to the facts of this case, this case is distinguishable from *Brown*, 496 So.2d 261. In *Brown*, the

8

potential juror stated that it would be hard for her to be fair and impartial whereas in the present case, Iskenderian knew Berryman but never declared that she would not be fair and impartial. Based on the supreme court's ruling in *Sonnier*, 379 So.2d 1336, and this court's rulings in *Gibson*, 505 So.2d 237, and *Hallal*, 544 So.2d 1222, we cannot say that Defendant showed that Iskenderian's relationship with Berryman was such that it was reasonable to conclude that it would influence Iskenderian in arriving at a verdict. Accordingly, the trial court properly denied the challenge for cause.

### B.    Venable and Garrett

During voir dire of the panel on which Venable and Garrett were seated, the trial court stated that it would instruct them on the law applicable to this case. The trial court stated that they must apply the law as instructed to the facts of the case. The trial court further stated: "Could you find the defendant not guilty even if the defendant chose not to testify or to present any evidence, because the law says that it is his right." The trial court asked if everyone understood the law and if anyone wanted to talk about it. There were no responses from the prospective jurors.

Defense counsel subsequently questioned Garrett as follows:

MR. METHVIN: Okay. Thank you. Ms. Garrett, number 14. If the State produces an eyewitness that places a defendant at the scene of the crime, do you believe that defendant has the obligation to put on evidence to show that he was not there?

MS. GARRETT: Yes.

MR. METHVIN: Okay. And why do you believe that?

MS. GARRETT: Because if it's an eyewitness there that can put him at the scene, I figure it's his defense to try to show them that he wasn't there.

MR. METHVIN: Okay. So you believe that if somebody says that the defendant was there and he committed this crime, that if he doesn't put on any evidence to counter that then you'd find him guilty?

9

MS. GARRETT: Yes, pretty much. But the person that's saying he was there would have to be a reliable source, also.

MR. METHVIN: Okay. If you chose not to testify or he chose not to put on any witnesses at the close of the prosecution's case, would you still [hold] that against him?

MS. GARRETT: If you don't try to defend himself against it.

MR. METHVIN: Okay. And that's . . . even if the judge is to tell you that you can't do that. That you can't hold it against him that he . . . if he doesn't testify that you can't hold that against him, and that if he doesn't produce any witnesses, you can't hold that against him, you would still hold it against him?

MS. GARRETT: No, not allowed to do it. No, I couldn't do it.

Venable was then asked how she felt about that, and the following exchange occurred:

MS. VENABLE: Well, if it's a reliable eyewitness, says they saw him, it would be hard not to believe that.

MR. METHVIN: Okay. The question goes more to, does the defendant have the responsibility to produce evidence to show that he's innocent?

    . . . .

MS. VENABLE: Well, the judge had said that he does not have to testify on his own behalf. So I would have to respect that.

The subsequent exchange followed:

THE COURT: Some of you appeared to give some answers that were inconsistent with what I asked you earlier, and I want to clarify that so we can hear all that . . . . Mr. Methvin's point that he was attempting to make is a legitimate one. He wants to be sure that if his client chooses not to testify or present any evidence that you won't hold that against him. I did give you an instruction. I told you during the process of questioning, that that is the right of a defendant in America that he cannot be made to testify or present any evidence. And if he chooses not to do so, that's his right. And you cannot hold it against him. And so, Ms. Garrett, I know that you and Mr. Methvin talked about that, how do you feel?

MS. GARRETT: Well, I get the understanding of it since the way you put it, but if he . . . I would have to go mainly on what the prosecutor have [sic] to prove to me. I wouldn't hold it against him that [sic] he don't [sic] try to, you know, testify for himself or anything.

10

When asserting his objections to jury selection, defense counsel objected to the denial of a challenge for cause to Venable. Defense counsel said Venable was a "burden shifter." Counsel believed Venable was going to require Defendant to do something to "rebut, whether or not the prosecutor's case was credible or not." The State argued that although Venable said she would "expect him to rebut" if there was an eyewitness, she subsequently stated she would follow the law. The trial court stated it was comfortable that Venable sufficiently rehabilitated herself and denied the challenge for cause. Defense counsel then noted he used a peremptory challenge to strike Venable.

Defense counsel also objected to the denial of a challenge for cause to Garrett. Defense counsel argued that Garrett specifically stated she would judge the State's case based on whether "he" was credible but would still expect the defense or Defendant to rebut what an eyewitness said. The State asserted that Garrett said that she would follow the law. The trial court stated Garrett "came back" and specifically said that she would follow the law and that she was sufficiently rehabilitated. Defense counsel then noted he used a peremptory challenge to strike Garrett.

As discussed above in *Odenbaugh*, 82 So.3d at 237, the supreme court held that an abuse of discretion fails to occur when a trial court "refuses to excuse a prospective juror on the ground he is not impartial where, after further inquiry or instruction, the potential juror has demonstrated a willingness and ability to decide the case impartially according to the law and evidence."

After our review, we find no abuse of discretion in the trial court's acceptance of potential jurors who initially expressed doubts about Defendant's choice to refuse to testify at trial and subsequently, on further inquiry, demonstrated a willingness to apply the law and presumption of innocence as

11

instructed. Accordingly, the trial court properly denied the challenges for cause as to Garrett and Venable. This assignment of error lacks merit.

## III. Assignment of Error Number Two

In his second assignment of error, Defendant contends that he was denied the right to full review on appeal as the record was incomplete.

Defendant asserts that during jury selection, the judge and attorneys discussed the challenges raised by both sides in chambers with no contemporaneous recording of the exercise of challenges or the arguments of counsel. Defendant argues that the off-the-record discussions with regard to the use of all challenges would add additional support to the arguments raised in his first assignment of error regarding cause challenges.

Defendant notes that the record in the case at bar was supplemented with the jury strike sheets and those sheets indicate which prospective jurors were successfully challenged for cause and those who were peremptorily struck. Defendant asserts that the sheets do not indicate which prospective jurors were unsuccessfully challenged for cause, who raised those unsuccessful cause challenges, which side sought the cause challenges that were granted, and the arguments of counsel or the basis for trial court's rulings. Defendant contends that all of this information is important in evaluating the fairness in the jury selection process and in evaluating whether challenges for cause should have been granted.

In *State v. Deruise*, 98-541 (La. 4/3/01), 802 So.2d 1224, *cert. denied*, 534 U.S. 926, 122 S.Ct. 283 (2001), the defendant argued the appellate record was insufficient to enable the court and appellate counsel to review the proceedings for error. The defendant complained that the court reporter did not identify prospective jurors by name as they responded to questions during voir dire and further failed to record bench conferences in which peremptory strikes and

12

challenges for cause were made by the prosecutor and defense counsel. The supreme court noted that, while the bench conferences had not been recorded, the defendant only pointed to one potential juror whom he believed should have been struck for cause. The defendant alleged the trial court erroneously denied a cause challenge as to prospective juror Kreider. It was not certain from the record whether a cause challenge had been made in regard to prospective juror Kreider, and the defendant was forced to use a peremptory challenge to excuse him. The supreme court, however, assumed such a challenge had been made and analyzed the issue raised by the defendant. The supreme court noted that voir dire revealed that Kreider most likely could have acted as an impartial and well-informed juror. As such, the supreme court held that the defendant's argument was without merit.

In *State v. Campbell*, 06-286 (La. 5/21/08), 983 So.2d 810, *cert. denied*, 555 U.S. 1040, 129 S.Ct. 607 (2008), the defendant claimed that the transcript of numerous court appearances, hearings, and bench conferences were omitted from the appellate record. He also suggested that record omissions during voir dire rendered it difficult to establish the viability of cause challenges. Thus, he argued that the lack of a complete appellate record warranted reversal of his conviction.

The supreme court addressed the issue stating:

> In [*State v. *]*Landry*[, 97-499 (La. 6/29/99), 751 So.2d 214], this Court reversed a conviction and death sentence because the appellate record was so deficient that the Court could not properly review the case for error. Even though this Court has found reversible error when material portions of the trial record were unavailable or incomplete, a "slight inaccuracy in a record or an inconsequential omission from it which is immaterial to a proper determination of the appeal" does not require reversal of a conviction. An incomplete record may be adequate for appellate review. A defendant will not be entitled to relief on the basis of an incomplete record absent a showing that he was prejudiced by the missing portions of the record.

> Defense counsel contends that the fact that the defendant represented himself at trial, coupled with the issues raised regarding the defendant's competency, necessitate a complete and accurate

record since the defendant lacks the ability to provide important information to his appellate counsel. However, the defense offers no suggestion or argument that the defendant was prejudiced by the record omissions.

. . . .

With regard to the transcription of the voir dire proceedings, we found no difficulty in determining the appropriateness of the cause challenges, which were the issues raised by the defendant on appeal.

*Id*. at 872-74 (citations omitted).

In *State v. Williams*, 06-1327 (La.App. 4 Cir. 1/23/08), 977 So.2d 160, *writ denied*, 08-413 (La. 10/24/08), 992 So.2d 1033, the defendant argued that his right to full appellate review was impinged because the in-chambers portion of voir dire, where he raised challenges for cause, was not available. The fourth circuit noted that appellate counsel, who was not counsel at trial, raised no argument as to any specific juror who should not have been seated. The fourth circuit ruled as follows:

Here, unlike in [*State v. ]Pinion*[, 06-2346 (La. 10/26/07), 968 So.2d 131,] but as in *Deruise*, the record contains detailed jury sheets that indicate the peremptory strikes for each party as well as those jurors who were excused for cause. In addition, as in *Deruise*, the transcript of *voir dire* includes the questioning of each prospective juror, from which it can be determined if there was a basis for any challenges for cause that the defense may have brought and may have been denied by the trial court, thereby causing the defense to exercise a peremptory challenge for a juror. A reading of the transcript of *voir dire* shows that there was no basis to excuse for cause any of the jurors who ultimately served on the jury or those whom the appellant had to excuse peremptorily. Thus, as in *Deruise*, the appellant cannot show prejudice from the loss of the in-chambers portions of the *voir dire* where the defense may have challenged any of these jurors for cause because there was no basis for granting a challenge for cause as to any of the jurors who sat at trial or whom the defense peremptorily excused. Because the appellant cannot show prejudice from the lack of the transcript of these in-chambers conferences, he is not entitled to a new trial on this basis.

*Id*. at 176.

The record in the case at bar now contains the jury strike sheets which list the peremptory strikes exercised by each party and the cause challenges granted by

the trial court. Because we addressed Defendant's claims asserted in his first assignment of error, Defendant cannot show he was prejudiced by the failure to record the in-chambers discussions regarding jury selection. *See Deruise*, 802 So.2d 1224 and *Campbell*, 983 So.2d 810. Because Defendant cannot show prejudice, he is not entitled to a new trial. For these reasons, Defendant's assignment of error lacks merit.

**IV.   Assignment of Error Number Three**

In his third assignment of error, Defendant contends the jury instructions incorrectly included the phrase "or to inflict great bodily harm" within the attempted second degree murder charge and violated the fundamental rights of due process as guaranteed by the Fifth and Fourteenth Amendments to the Constitution of the United States. Defendant alleges that counsel erred in failing to object to the insufficient charge.

When charging the jury, the trial court read the definition of second degree murder stating:

> Second degree murder is the killing of a human being, one, when the offender has a specific intent to kill or inflict great bodily harm. Or, two, when the offender is engaged in the perpetration of armed robbery, even though he has no specific intent to kill or inflict great bodily harm. Thus in order to convict the defendant of second degree murder, you must find, one, that the defendant killed ShaMichael [sic] Berryman, and two, that the defendant acted with a specific intent to kill ShaMichael [sic] Berryman or inflict great bodily harm on him, or three, that the defendant was engaged is the perpetration or attempted perpetration of armed robbery. Even though he had no specific intent to kill or inflict great bodily harm.

When reading the definition of attempted second degree murder, the trial court stated: "The defendant is charged also with the attempted second degree murder of DeKaria (sic) Williams. I have already defined the crime of second degree murder for you. I will now define attempt for you." The trial court then defined attempt.

15

Defendant contends the trial court failed to instruct the jury that it must find he had the specific intent to kill Williams to return a guilty verdict. Defendant notes that defense counsel did not object to the erroneous instruction. Defendant cites *State v. Williamson*, 389 So.2d 1328 (La.1980), for the proposition that an error that involves the very definition of the crime of which a defendant is convicted violates the fundamental requirements of due process. Defendant also cites *State v. Smith*, 46,343 (La.App. 2 Cir. 6/22/11), 71 So.3d 485, *writ denied*, 11-1646 (La. 1/13/12), 77 So.3d 950, for the proposition that although La.Code Crim.P. art. 801 bars consideration of the issue if no objection was lodged, certain exceptions have been carved out. Defendant argues that because the jury charge as to the elements of attempted second degree murder incorrectly included the great bodily harm language, this assignment of error should be considered despite defense counsel's failure to object, because the jury instructions were fundamentally flawed. Accordingly, Defendant contends a new trial is warranted.

The State asserts any error in failing to reread the proper definition of second degree murder was harmless, as Defendant confessed to shooting Williams several times, and this was indicative of his intent to kill. Further, no contemporaneous objection was lodged; thus, it would be improper to address the matter pursuant to La.Code Crim.P. art. 801.

In *Williamson*, 389 So.2d 1328, the trial court erroneously instructed the jury as to the evidence required to find the defendant guilty of attempted first degree murder and a responsive verdict of attempted second degree murder. Amendments to the first degree and second degree murder statutes had taken effect nineteen days prior to the offenses. The defendant failed to object to the erroneous instructions. The supreme court held "the asserted error involves the very definition of the crime of which defendant was in fact convicted" and, as such, violated the "fundamental

16

requirements of due process." *Id*. at 1331. Accordingly, the supreme court reviewed the assignment of error, reversed the defendant's convictions, and remanded the case for a new trial.

In *State v. Thomas*, 427 So.2d 428 (La.1982), the defendant appealed asserting the trial court erroneously instructed the jury on the basis of a superceded first degree murder statute. Defense counsel failed to object to the error at trial. The supreme court concluded the issue was not preserved for review and discussed *Williamson* as follows:

> In *State v. Williamson*, 389 So.2d 1328 (La.1980), we allowed review of an erroneous jury instruction despite the defendant's failure to object at trial. We express no opinion on whether this court will again grant review under the unique facts of *Williamson*, but leave that as an open question. However, *Williamson* should not be construed as authorizing appellate review of every alleged constitutional violation and erroneous jury instruction urged first on appeal without timely objection at occurrence. This court has not created or recognized a plain error rule of general application.

*Id*. at 435.

In *State v. Hongo*, 96-2060 (La. 12/02/97), 706 So.2d 419, the trial court erroneously instructed the jury that, to find the defendant guilty of attempted second degree murder, it had to find the defendant had the specific intent to kill or inflict great bodily harm. Defense counsel failed to object to the erroneous instruction. The supreme court concluded the erroneous instruction constituted a trial error and was, therefore, subject to a harmless error analysis. The supreme court discussed *Williamson*, 389 So.2d 1328, and *Thomas*, 427 So.2d 428, in footnote three as follows:

> Although this case is before us via post conviction proceedings because of trial counsel's failure to object, we note that because we find that the instant error is not structural, it necessarily is not of such significance as to violate fundamental requirements of due process, *See State v. Williamson*, 389 So.2d 1328 (La.1980), and thus a defendant must make a contemporaneous objection in order to preserve the error for direct review. *State v. Thomas*, 427 So.2d 428,

435 (La.1982) (on rehearing) (limiting *Williamson* as it "should not be construed as authorizing appellate review of every alleged constitutional violation and erroneous jury instruction urged first on appeal without timely objection.")

*Hongo*, 706 So.2d at 422. The supreme court also followed *Hongo* in *State v. Bishop*, 01-2548 (La. 1/14/03), 835 So.2d 434.

We further note that Defendant's co-defendant, Law, was convicted of second degree murder and attempted second degree murder arising from the events at issue in the case at bar. In *State v. Law*, 12-1024, p. 18 (La.App. 3 Cir. 4/3/13), 110 So.3d 1271, 1284, this court found that defense counsel's failure to object to the jury instructions, which were the same as those at issue herein, rendered the Law's assignment of error meritless.

In the instant case, defense counsel failed to object to the allegedly erroneous jury instructions and Defendant does not argue that defense counsel was ineffective for his failure to do so. Accordingly, this assignment of error was not preserved for review. La.Code Crim.P. art. 801(C); La.Code Crim.P. art. 841. Thus, Defendant's assignment of error is without merit.

**V.    Assignment of Error Number Four**

In his fourth assignment of error, Defendant contends the trial court erred in admitting two firearms into evidence at trial, as neither weapon was connected to him.

At trial, Detective Julius Armstrong testified that days after the offenses, he recovered a .9 millimeter Ruger pistol from 1539 Dorothy Street and a .380 caliber Bersa pistol from 839 Dorothy Street. He was not sure of the date the weapons were found. Defense counsel objected, asserting the State failed to lay a proper foundation for their admission because the witness had not stated when the weapons were recovered or what their connection to the crime was.

The State subsequently attempted to introduce the .380 into evidence as State's Exhibit 39, and defense counsel objected to the introduction of both State's Exhibits 38, the .9 millimeter, and State's Exhibit 39, arguing the weapons had not been linked to Defendant, and police could not state which weapon was found at the scene and which was turned over to police by a third party. The trial court overruled the objection, finding the issue went to the weight to be given the evidence and not to its admissibility. The .380 was then admitted into evidence.

Richard Beighley, an expert in firearms identification, testified that ten fired .9 millimeter casings found at the scene had been fired from the .9 millimeter Ruger marked as State's Exhibit 38. He also testified that four fired .380 caliber casings found at the scene had been fired from the .380 caliber Bersa marked as State's Exhibit 39. The State subsequently offered the .9 millimeter into evidence, and defense counsel asserted its admission was "subject to the same objections." The objection was overruled, and the .9 millimeter and .380 were admitted into evidence.

Audra Williams, an expert in forensic DNA analysis, testified that no DNA was found on swabs taken from the .9 millimeter and .380.

La.Code Evid. art. 403 provides:

> Although relevant,[2] evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue influence, or waste of time.

In *State v. Chesson*, 03-606, pp. 18-19 (La.App. 3 Cir. 10/1/03), 856 So.2d 166, 179-80, *writ denied*, 03-2913 (La. 2/13/04), 867 So.2d 686, this court stated the following regarding La.Code Evid. Art. 403:

---

[2] "Relevant evidence" is defined by La.Code Evid. art. 401 as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

19

However, even the erroneous admission of irrelevant evidence does not require a reversal of a conviction if the error is harmless beyond a reasonable doubt. *See State v. Wille*, 559 So.2d 1321 (La.1990), *cert. denied*, 506 U.S. 880, 113 S.Ct. 231, 121 L.Ed.2d 167 (1992), *citing Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). In *Sullivan v. Louisiana*, 508 U.S. 275, 279, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993), the United States Supreme Court explained that:

> Harmless-error review looks . . . to the basis on which "the jury *actually rested* its verdict." *Yates v. Evatt*, 500 U.S. 391, 404, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991)(emphasis added). The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error.

Defendant contends there was no evidence introduced to connect him to the firearms at issue, the property where one of the firearms was recovered, or the woman who turned in one of the firearms. Defendant alleges there was no DNA on the firearms. Defendant asserts the admission of the firearms was prejudicial because their admission impliedly connected him to the guns used in the shooting. Defendant contends the firearms were not relevant to a disputed issue of material fact as no one contested that Berryman and Williams were shot with either a .9 millimeter or a .380.

The State asserts the firearms were admissible as both suspects were seen running in the direction of Dorothy Street. Both firearms were found at an abandoned residence on Dorothy Street. Additionally, both firearms were identified as being the firearms used to commit the offenses. The State contends that Defendant and Law were identified as the people shooting at Williams and Berryman, and Defendant confessed to shooting Williams.

In *Chesson*, 856 So.2d 166, the defendant was convicted of second degree murder. On appeal, he argued the trial court erred by allowing irrelevant evidence to be introduced at trial. He specifically referred to a pair of men's pants and a

gym bag, the testimony of his estranged wife, evidence of a threat by him against his wife's brother, and the introduction of two knives and some clothes he asserted were not related to the crime. This court discussed the issue and held:

> [E]ven if we were to conclude that the evidence complained of was erroneously admitted, which we do not, our review of the record indicates that any such error would be harmless. The State's case included admissions the defendant made to police, and to fellow prisoner Thomas Stewart. Thus, we conclude that even if the individual items of evidence at issue lacked relevance, or were only marginally relevant, the defendant has failed to demonstrate that they improperly prejudiced his case.

*Id*. at 180.

In the present case, Defendant was charged with the second degree murder of Berryman and the attempted second degree murder of Williams. Testimony at trial indicated Defendant entered into a plan with Law and Paige to steal drugs. During the execution of that plan, Defendant shot Williams several times and Law shot Berryman six times and Williams at least once.

> The State may prove a defendant guilty by showing he served as a principal to the crime by aiding another. "Persons who aid and abet in the commission of a crime are guilty as principals although they do not directly commit the act constituting the offense." *State v. Sampson*, 472 So.2d 337, 339 (La.App. 3 Cir.1985) (quoting *State v. Bernard,* 441 So.2d 817 (La.App. 3 Cir.1983), *writ denied*, 445 So.2d 439 (La.1984)). Louisiana Revised Statutes 14:23 classifies the parties to crimes as either principals or accessories after the fact. Principals are defined by La.R.S. 14:24. The statute states, "All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." Those persons who knowingly participate in the planning or execution of the crime are principals. *State v. Pierre*, 93-0893 (La. 2/3/94); 631 So.2d 427.

*State v. Savoy*, 06-191, p. 11 (La.App. 3 Cir. 5/31/06), 931 So.2d 1207, 1213.

> "[S]pecific intent to kill may be inferred from a defendant's act of pointing a gun and firing at a person." *State v. Seals*, 95-0305, p. 6 (La.11/25/96), 684 So.2d 368, 373, *cert. denied*, 520 U.S. 1199, 117 S.Ct. 1558, 137 L.Ed.2d 705 (1997) (citations omitted). The fact that multiple shots are fired at a victim indicates a defendant's culpable

21

state of mind and satisfies the specific intent to kill requirement for murder. *State v. Griffin*, 618 So.2d 680, 700 (La.App. 2 Cir.), *writ denied*, 625 So.2d 1063 (La.1993).

*State v. Poullard*, 03-940, p. 21 (La.App. 3 Cir. 12/31/03), 863 So.2d 702, 718, *writ denied*, 04-908 (La. 3/18/05), 896 So.2d 995.

In the present case, Defendant admitted participating in a plan to steal drugs and was a principal to Law's act of killing Berryman during the execution of that plan. Additionally, Defendant admitted shooting Williams several times, and that act was indicative of his intent to kill Williams. For these reasons, Defendant has failed to show the admission of the firearms, if erroneous, improperly prejudiced his case. Accordingly, this assignment of error lacks merit.

## DECREE

The trial court's ruling regarding Jody D. Hamilton's convictions and sentences for second degree murder and attempted second degree murder is affirmed.

**AFFIRMED.**